UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:25-cv-12660-IT |
| | * |
| NATIONAL FIRE INSURANCE | * |
| COMPANY OF HARTFORD, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

February 25, 2026

TALWANI, D.J.

Plaintiff D.F. Pray, Inc. ("D.F. Pray") filed this action against Defendant National Fire Insurance Company of Hartford ("CNA") alleging that the insurer has improperly declined to cover Plaintiff's defense costs in violation of the parties' insurance policy. Verified Compl. ¶ 1 [Doc. No. 1].

Pending before the court is Plaintiff's Application for Preliminary Injunction Ordering Specific Performance ("Mot. for Prelim. Inj.") [Doc. No. 2] requesting that the court order Defendant to pay these defense costs, id. at 1, and Plaintiff's Reply in Support of its Application for Preliminary Injunction and Request for Sanctions Based Upon Perjurious Statements ("Reply") [Doc. No. 16]. Because Plaintiff has failed to demonstrate that it will suffer irreparable harm should the court deny the motion for a preliminary injunction, and where the request for sanctions was presented only in a reply brief and did not follow the procedure set forth in Federal Rule of Civil Procedure 11, both motions are DENIED without prejudice.

I.  **Background**

Plaintiff D.F. Pray, a construction manager, was retained by Hancock Q Plaza LLC, Quincy 1st LLC, and Quincy 2nd LLC (collectively, "LBC"), a developer, for a large construction project (the "Nova Residences Project"). Verified Compl. ¶¶ 1–2, 6 [Doc. No. 1]. Plaintiff purchased in connection with this project a commercial general liability insurance policy (the "CNA Policy" or the "Policy") from Defendant CNA, an insurance corporation. Answer ¶¶ 1, 3 [Doc. No. 13]. The Policy obligates Defendant to "pay those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies" and further states that Defendant "will have the right and duty to defend the Insured against any suit seeking those damages." Young Decl. Ex. A, at ECF 22 [Doc. No. 11-1] (emphasis omitted).

The Policy also contains an Other Insurance provision, which applies in instances where the insured possesses "other valid and collectible insurance" and limits Defendant's obligations. Id. at ECF 35. If the insured possesses other primary insurance, the two primary insurances will share the costs according to the policy terms. Id. at ECF 35–36. Meanwhile, where the insured has been added to a primary insurance as an additional insured, Defendant's insurance policy will be in excess over the other policy, and Defendant will not have a duty to defend if any other insurer has a duty to defend. Id.

Plaintiff subsequently hired Maple Mechanical, Inc. ("Maple") as a subcontractor for the Nova Residences Project. Verified Compl. ¶ 9. Plaintiff's contract with Maple required that Maple purchase general liability insurance. Id. ¶ 10. The contract further required that the insurance policy identify Plaintiff as an additional insured and imposed on Maple a duty to defend Plaintiff against, and indemnify Plaintiff for, claims of personal injury or property

2

damage. Id. Arbella issued a commercial general liability insurance policy for Maple that identified Plaintiff as an additional insured. Id. ¶ 11.

On March 3, 2021, LBC notified Plaintiff of damage to the Nova Residences property that it attributed to Plaintiff and its subcontractors. Id. ¶ 12. On September 16, 2021, LBC filed suit in Norfolk County Superior Court against Plaintiff and other project contractors (the "Underlying Action"), alleging that Plaintiff was responsible for a variety of previously unknown defects. Verified Compl. Ex. B, at ECF 2 [Doc. No. 1-2]; see also Compl. ¶ 27, Hancock Q Plaza, LLC et al. v. D.F. Pray, Inc. et al., No. 218CV00852 (Mass. Super. Ct. Sept. 16, 2021).

On September 18, 2025, Plaintiff filed its Verified Complaint [Doc. No. 1] against Defendant alleging that Defendant has failed to pay Plaintiff's defense costs. That same day, Plaintiff filed its Application for Preliminary Injunction Ordering Specific Performance [Doc. No. 2] requesting an order compelling Defendant "to perform its acknowledged obligations under a policy of commercial general liability insurance . . . and to pay attorneys' fees, expert fees and other costs associated with the defense of [Plaintiff]" in the Underlying Action. Mot. for Prelim. Inj. 1 [Doc. No. 2].[1]

---

[1] Plaintiff alleges it has incurred at least $250,000 in defense costs, Verified Compl. ¶ 1 [Doc. No. 1]; see also id. ¶ 37 (stating that Plaintiff has had to pay "more than $100,000 in costs and fees, and incur at least $200,000 more"), and that, "with a trial scheduled for February 2027," id. ¶ 37, Plaintiff "anticipates incurring at least another $300,000 in fees and costs to complete preparing the case and . . . defending claims[,]" id. ¶ 40.

## II.       Motion for a Preliminary Injunction

### A.       *Standard of Review*

The issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to such relief. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

Courts in this circuit typically "apply the federal preliminary injunction standard in a diversity case, at least where the parties have not suggested that state law supplies meaningfully different criteria." Lanier Pro. Servs., Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999) (citing Ocean Spray Cranberries, Inc. v. PepsiCo, Inc., 160 F.3d 58, 61 (1st Cir. 1998)). The First Circuit has further noted that the "Massachusetts standards for a preliminary injunction do not seem markedly different[.]" Ocean Spray Cranberries, Inc., 160 F.3d at 61. Here, Plaintiff does note that under "Massachusetts law[,] . . . the public interest is not ordinarily considered in determining whether to grant a preliminary injunction." Mot. for Prelim. Inj. 5–6 [Doc. No. 2] (alteration in original) (citing Bank of New England, N.A. v. Mortg. Corp. of New England, 30 Mass. App. Ct. 238, 245–46 (1991)). Where this court's decision in this case turns on the issue of irreparable harm, the court will apply the federal four-part test, which evaluates:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006) (alteration in original) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)).

"The burden of demonstrating irreparable harm 'rests squarely upon the movant.'" California v. Kennedy, 802 F. Supp. 3d 273, 281 (D. Mass. 2025) (quoting Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)). When seeking preliminary

4

relief, the moving party must show that a harm is likely, not just possible. Winter, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."); see also Bio-Imaging Techs., Inc. v. Marchant, 584 F. Supp. 2d 322, 330 (D. Mass. 2008) (quoting Sierra Club v. Larson, 769 F. Supp. 420, 422 (D. Mass. 1991) ("Irreparable harm requires 'an actual, viable, presently existing threat of serious harm.'")); Charlesbank Equity Fund II, 370 F.3d at 162 ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.").

B.  *Irreparable Harm*[2]

Plaintiff contends that failure to compel Defendant to pay for Plaintiff's defense would result in irreparable harm. Mot. for Prelim. Inj. 8 [Doc. No. 2]. Defendant responds that Plaintiff has failed to make a specific showing of harm that will result from not receiving defense costs. Def.'s Opp'n to Pl.'s Application for Prelim. Inj. 6–7 [Doc. No. 12]. It contends that "Plaintiff has not alleged that it is unable to pay its defense costs or that it will file bankruptcy if the status quo remains unchanged." Id. 8–9. Defendant consequently asserts that "[t]here is no indication that Plaintiff will suffer irreparable harm or that such harm is likely to occur." Id. at 9. Though Defendant somewhat overstates its position, where the burden of demonstrating that a denial of

---

[2] As a threshold matter, Plaintiff alleges that "[s]pecific performance is by its very nature a form of mandatory injunctive relief that does not require a party to establish irreparable harm." Mot. for Prelim. Inj. 5 n.1 [Doc. No. 2]. The two cases Plaintiff cites in support of this proposition, however, do not concern motions for preliminary relief. See 282 Shore Drive Realty Tr. v. Wilensky, No. 17 MISC 000545 (MDV), 2018 WL 1787352, at *5 (Mass. Land Ct. Apr. 12, 2018), judgment entered, No. 17 MISC 000545 (MDV), 2018 WL 1787346 (Mass. Land Ct. Apr. 12, 2018) (adjudicating motions for summary judgment); W. Air Lines, Inc. v. Allegheny Airlines, Inc., 313 A.2d 145, 152 (Del. Ch. 1973) (addressing a motion to dismiss, motion for summary judgment, and motion "for an order continuing for further discovery consideration of the plaintiffs' motion [for summary judgment].").

interim relief is likely to cause irreparable harm "rests squarely upon the movant," Charlesbank Equity Fund II, 370 F.3d at 162, the court finds Plaintiff has not made sufficient showing of irreparable harm.

Generally, it is the case that "traditional economic damages can be remedied by compensatory awards, and thus do not rise to the level of being irreparable." NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc., 927 F.3d 1, 5 (1st Cir. 2019) (quoting Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009)); see also Charlesbank Equity Fund II, 370 F.3d at 162 ("Irreparable harm most often exists where a party has no adequate remedy at law."). In certain instances, however, injunctive relief may be permissible "where the potential economic loss is so great as to threaten the existence of the movant's business." NACM-New England, Inc., 927 F.3d at 5 (quoting Vaquería Tres Monjitas, Inc., 587 F.3d at 485). The allegations of irreparable harm raised by the movant must also "possess some substance; a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).

Plaintiff provides only limited support for its claim that it will experience irreparable harm. In Plaintiff's Application for Preliminary Injunction Ordering Specific Performance [Doc. No. 2], Plaintiff notes that it "has paid more than $100,000 in fees, incurred more than $150,000 in legal fees, costs and expenses and anticipates another $300,0000 to complete the remaining work with a trial scheduled in February 2027." Id. at 2. From this it concludes that "[t]he failure to contemporaneously pay Pray's defense costs has compromised Pray's defense and impacted

6

its ability to retain experts and pay fees for the attorneys it selected, resulting in irreparable harm." Id.[3]

Plaintiffs Verified Complaint [Doc. No. 1] does not provide much more. There, Plaintiff again alleges that, by not receiving reimbursement from CNA, it has been forced "to incur significant and otherwise unanticipated costs and has compromised its defense to the property damage claims asserted." Id. ¶ 2. Plaintiff further notes that Defendant "directed Pray to select an expert from CNA's approved list (which contained experts that were more expensive)[,]" id. ¶ 29, and that Defendant's "actions and omissions have directly interfered with Pray's defense and are potentially subjecting Pray to liability[,]" id. ¶ 39.

Incurring defense costs is not, on its own, sufficient to establish irreparable harm. Plaintiff has incurred significant amounts in fees on account of Defendant's decision not to fund Plaintiff's defense costs. Plaintiff, however, has not established that these expenses are so great that they "threaten the existence" of Plaintiff's business. NACM-New England, Inc., 927 F.3d at 5. Moreover, where the parties have now filed cross-motions for summary judgment, the dispute is likely to be finally resolved well before the February 2027 trial date.

To the extent that Plaintiff contends that its defense is likely to be irreparably harmed if Defendant is not compelled to pay defense costs, Plaintiff has similarly not made a sufficient showing. Plaintiff cites Clear Blue Specialty Ins. Co. v. Ozy Media, Inc., 669 F. Supp. 3d 907 (N.D. Cal. 2023), for the proposition that "[w]hile 'economic hardship' is generally insufficient [to constitute irreparable harm], the ability to retain assistance of counsel raises the stakes

---

[3] The motion later asserts that "[t]he failure to pay has directly impacted Pray's defense, its ability to retain possibly multiple experts, and the continued retention of attorneys[,]" which could result in "a risk of civil exposure in the Desing [sic] Defect Action[.]" Mot. for Prelim. Inj. 9 [Doc. No. 2].

beyond mere financial hardship[.]" Mot. for Prelim. Inj. 9 [Doc. No. 2] (citing Clear Blue Specialty Ins. Co., 669 F. Supp. 3d at 929). Yet, while Plaintiff notes its ability to retain experts and pay attorney fees has been affected, at no point does Plaintiff assert that it will be unable to retain experts or that it is at risk of losing representation on account of Defendant's failure to pay, nor does Plaintiff provide any information to substantiate such claims. See Emons Indus., Inc. v. Liberty Mut. Ins. Co., 749 F. Supp. 1289, 1293 (S.D.N.Y. 1990) (Plaintiff "presented evidence of its financial condition" in the form of financial statements.).

Plaintiff relies, in part, on In re WorldCom, Inc. Securities Litigation ("WorldCom"), 354 F. Supp. 2d 455 (S.D.N.Y. 2005), to assert that "[a]n insurer's failure to pay defense costs when they are incurred constitutes an immediate and direct injury sufficient to establish irreparable harm." Mot. for Prelim. Inj. 8 [Doc. No. 2] (citing In re WorldCom, Inc. Sec. Litigation, 354 F. Supp. 2d at 469). WorldCom, however, did not establish that a failure to pay defense costs constitutes irreparable injury as a matter of law. See Daileader v. Certain Underwriters at Lloyds London Syndicate 1861, 96 F.4th 351, 359 (2d Cir. 2024) ("[Plaintiff] invites us to announce a new exception to our usual irreparable-harm principle: 'as a matter of law, [t]he failure to receive defense costs when they are incurred constitutes an immediate and direct injury,' satisfying the irreparable harm requirement. . . . We decline his invitation."); id. ("WorldCom remains good law, but it announced no new general rule with respect to irreparable harm, much less one binding upon this court.").

Further, the facts in WorldCom meaningfully differ from those in this case. WorldCom concerned a motion by a member of WorldCom, Inc.'s board of directors to require his insurer to pay his defense costs in pending litigation. In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d at 458. The pending litigation concerned alleged violations of federal securities laws by

WorldCom, Inc. Id. The director was named as a defendant in the consolidated WorldCom securities class action and numerous other related lawsuits. Id. Finding the movant would experience irreparable harm if his defense costs were not paid, the court noted the class action trial was set to begin less than a month after the issuance of the court's order and that an adverse judgment could be potentially ruinous for the movant. Id. at 469 ("The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin[.]"). Here, trial is not scheduled to start until one year from now, in February 2027, see Verified Compl. ¶ 37 [Doc. No. 1], and Plaintiff here has not suggested it may face such significant financial liability.

Finally, and perhaps most notably, at issue in WorldCom was a directors and officers (D&O) insurance policy. In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d at 469. The WorldCom court explained that such policies "play[] an important role in corporate governance in America" and are designed to encourage "competent men and women" to serve on corporate boards. Id. The WorldCom court noted this distinguished the case from an earlier case, cited by an insurer party to the suit to assert that the movant had not shown irreparable injury, on the grounds that the earlier case "did not address a D&O policy" but rather "focused on the duty to defend and indemnify a corporation." Id. at 470 (emphasis added). Unlike the policy in WorldCom, the CNA Policy is for Plaintiff's corporation.

Other cases cited by Plaintiff are similarly distinguishable where the movants there faced potential irreparable financial harm, substantial civil liability, criminal liability, or the withdrawal of counsel. Great Am. Ins. Co. v. Gross, No. Civ. A. 305CV159, 2005 WL 1048752, at *4 (E.D. Va. May 3, 2005) (Irreparable harm found where movants "face[d] massive civil liability" due to pending "complex, fact intensive actions" and where failure to advance defense

costs would have the practical effect of causing movants' counsel of over two years to withdraw, leaving them without representation.); Clear Blue Specialty Ins. Co. v. Ozy Media, Inc., 669 F. Supp. 3d 907, 928–29 (N.D. Cal. 2023) (Insureds were "defending multiple ongoing civil and criminal proceedings" and contended they were in "urgent need of defense costs to adequately [fund] their defenses." (citation modified)); Emons Indus., Inc., 749 F. Supp. at 1291, 1293–94 (withholding of defense or indemnity payments constituted irreparable harm where plaintiff's mounting defense costs would "create a serious threat to Emons's continued solvency" and could put Plaintiff "in a position of having to bankrupt itself shortly in order to defend itself" and where withholding of such payments would "render impossible the settlement of some or all of [plaintiff's] cases"); XL Specialty Ins. Co. v. Level Glob. Invs., L.P., 874 F. Supp. 2d 263, 273 (S.D.N.Y. 2012) (Insureds faced potential criminal charges, risk of regulatory sanctions that could result in insured potentially being barred from working in securities industry, and possibility of losing existing counsel due to inability to pay.).

The court does not disagree that Defendant's actions have impacted Plaintiff, requiring that it incur expenses it otherwise would not have. Moreover, if Defendant is found on summary judgment to have a duty to defend that it has failed to meet, the failure to do so may be relevant to Plaintiff's claims of unfair and deceptive acts and practices and for treble damages under Mass. Gen. Laws ch. 93A. See Verified Compl. ¶¶ 51–54 [Doc. No. 1]. At this juncture, however, Plaintiff has not demonstrated the harm it faces is irreparable.

    C.    *The Remaining Preliminary Injunction Factors*

Plaintiff contends that it has a substantial likelihood of establishing its right to a defense under the CNA Policy, Mot. for Prelim. Inj. 6 [Doc. No. 2]; id. at 8, and that the balance of equities weighs in its favor, id. at 9–10. Defendant disagrees. Def.'s Opp'n to Pl.'s Application for Prelim. Inj. 4–6 [Doc. No. 12]; id. at 9–11.

Finding Plaintiff has not demonstrated that it is likely to experience irreparable harm at this time, the court need not address the other three elements of the preliminary injunction standard. See Charlesbank Equity Fund II, 370 F.3d at 162 ("[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief."); see Together Emps. v. Mass Gen. Brigham Inc., 32 F.4th 82, 85 (1st Cir. 2022) (affirming denial of preliminary injunction after considering only the irreparable harm prong of the preliminary injunction standard).

### III.    Request for Sanctions

In its Reply [Doc. No. 16], Plaintiff asserts that Defendant "has made a series of intentional misrepresentations (under oath)[.]" Id. at 1 (citing Def.'s Opp'n to Pl.'s Application for Prelim. Inj. 4, 6 [Doc. No. 12]; Verified Answer ¶¶ 20, 25, 26, 29, 33, 34, 36, 37, 43 [Doc. No. 13]). Plaintiff asserts that the submission of these filings violates Federal Rule of Civil Procedure 11. Id. at 1 n.1.

Defendant's Sur-reply in Response to Plaintiff's Reply in Further Support of Application for Preliminary Injunction [Doc. No. 21] does not respond to these charges of intentional misrepresentations. Nonetheless, the court declines to award sanctions where Plaintiff has not followed the procedure set forth in Rule 11.

Rule 11 requires that counsel certify, inter alia, that the factual contentions in their filings have evidentiary support and that the denials of factual contentions are warranted on the evidence. Fed. R. Civ. P. 11(b)(3), (4). The Rule also requires, however, that any motion for sanctions must be made separately from any other motion, must be served under Rule 5, and may be presented to the court if the challenged contention or denial is not withdrawn or appropriately corrected within 21 days after service. Fed. R. Civ. P. 11(c)(2). Plaintiff's request for sanctions fails to follow this procedure.

11

## IV. Conclusion

Plaintiff has not demonstrated there is a likely risk of irreparable harm if its request for an injunction was denied and therefore does not satisfy the standard for a preliminary injunction. Plaintiff also has not followed the procedure mandated under Fed. R. Civ. P. 11(c)(2) for a sanctions motion. Accordingly, Plaintiff's <u>Application for Preliminary Injunction Ordering Specific Performance</u> [Doc. No. 2] and <u>Reply in Support of its Application for Preliminary Injunction and Request for Sanctions Based Upon Perjurious Statements</u> [Doc. No. 16] are DENIED without prejudice.

IT IS SO ORDERED.

February 25, 2026                                       /s/ Indira Talwani
                                                        United States District Judge